## PEOPLE'S BANK v. JACKSON.

1. NOTE FOR PURCHASE MONEY—USURY.—The stipulation in a note for the purchase money of land, calling for ten per cent. interest from its date, the law in force at the date of the note forbidding a greater rate of interest than seven per cent. on "any contract arising in this State for the hiring, lending, or use of money or other commodity," renders the note usurious. Thompson *v.* Nesbit, 2 Rich., 73, followed.[1]

2. IBID.—IBID.—VENDEE.—Where three persons purchase a tract of land, and give their joint note and mortgage for the purchase money, and two of them sell their interests in this land to the other, he may plead usury to the whole note, and is not limited in his plea to one-third of it, he being liable for the whole debt.

Before WATTS, J., Fairfield, February, 1894.

This was an action by the People's Bank against Adam Jackson, James Jackson, Albert Gladney, and John R. Craig, as assignee of C. Brice & Co., commenced January 13, 1893. No testimony is printed in the Brief, nor is the report of the referee, and the Circuit decree refers to no facts other than those admitted by the pleadings. It is stated, however, that the note secured by the mortgage was given for the purchase money of the mortgaged land. This note, admitted by the answer, calls for $1,595 in three several instalments, "with interest at the rate of ten per cent. per annum upon the whole from date." It is dated January 1, 1883.

*Mr. J. E. McDonald,* for appellant.

*Messrs. Ragsdale & Ragsdale,* contra.

---

1 With the above case in 27 L. R. A., 569, is a note compiling the authorities on the question of usury in deferred payments of purchase money.

January 19, 1895. The opinion of the court was delivered by

MR. JUSTICE GARY. This action was brought for a fore-closure of a mortgage of realty, executed by Adam Jackson, James Jackson, and Albert Gladney, to Calvin Brice and John A. Brice, and assigned by them to the plaintiff herein after maturity. The mortgage was given to secure the payment of a note which had been executed by the defendants for the purchase money of the mortgaged premises. It was the joint note of all the defendants for the sum of $1,595, with interest from date at ten per cent. per annum, and was dated the first day of January, 1883. Before the commencement of this action James Jackson and Albert Gladney had conveyed their interests in the mortgaged premises to Adam Jackson, and he alone answered the complaint. His answer interposed the defences of payment and usury. The referee, to whom the case was referred, filed a report adverse to the defendant. The case came on for trial before his honor, R. C. Watts, presiding judge, on exceptions to the report of the referee. His honor modified the report by sustaining the plea of usury and in other respects not material here.

The plaintiff appealed to this court on the following exceptions: "1. For that his honor erred in holding that the plea of usury was applicable to the note set forth in the complaint, and that the plaintiff could not recover anything except the principal of said note without costs. 2. Because his honor erred in not holding that the said note was given for the purchase money of the tract of land described in the mortgage, and for that reason the interest mentioned and charged therein was not usurious. 3. For that his honor erred in not holding that the note, having been given for the purchase money of land, was not a 'contract arising in this State for the hiring, lending or use of money or other commodity,' and, therefore, the plea of usury should not have been sustained. 4. For that his honor erred in not holding that the plea of usury, even if applicable, could only affect said note and mortgage to the extent of the interest of Adam Jackson in the land at time said note and mortgage were executed."

This case is ruled by the principle laid down in the case of

*Thompson* v. *Nesbit*, 2 Rich., 73, the facts of which are as follows: To an action of assumpsit on a note for $1,300, credited by $750 paid at various times, the defendant pleaded usury. The note was given for a negro sold by the plaintiff to the defendant. The plaintiff asked $1,000 for the negro. The defendant was willing to purchase at that price, but could not pay the cash. The plaintiff was willing to give any time that the defendant wanted, if he could have the price increased by the addition to the $1,000 of ten per cent. per annum until payment should be made. After consultation with several persons as to the best means of carrying out their bargain so as to steer clear of usury, it was agreed that the defendant should fix the time and the plaintiff the price. The defendant said he must have three years; the plaintiff said he must have $300 more. Whereupon the bill of sale was drawn expressing the consideration to be $1,000, and the note was drawn in the following words: "Three years after date I promise to pay H. Thompson, or bearer, thirteen hundred dollars, to be paid at such times as I please, and to deduct ten per cent. per annum off of the amount paid at each payment. 11th Nov., 1839. (Signed) Samuel Nesbit." The intention was that ten per cent. per annum should be *added* to each payment from the time it was made until the note became due, so that the defendant should have the right of paying as he pleased within the three years, and upon every payment should have interest calculated in the same manner as it had been done on the $1,000.

His honor left it to the jury to say whether there was a *bona fide* sale of the negro at $1,300 upon credit, with a stipulation of advantage to the defendant upon payments anticipated, or whether there was forbearance of $1,000 upon usurious terms. The court in that case said: "The effect of the agreement is precisely the same as if the note had been taken for $1,000, the price of the negro, with usury at ten per cent. per annum. * * * No proof of a corrupt agreement is necessary, for the contract may be usurious, though the parties did not know that it was against law." The court also held that "the jury should have been instructed that the uncontradicted state of facts submitted

to them presented a case of usury, and that they should find for the plaintiff only that balance." The plea of usury was sustained.

The case of *Wheeler* v. *Marchbanks*, 32 S. C., 594, does not conflict with the case just mentioned. Chief Justice Simpson, in delivering the opinion of the court in *Wheeler* v. *Marchbanks*, says: "It is sufficient for us to say that the question involved is whether the transaction between the parties, and which gave rise to the action below, was a loan of money by the plaintiff to the defendant, or was a sale of land to said defendant by said plaintiff." In that case the Circuit Judge found that the facts made out a sale of the land; whereas, in the case at bar, interest, *eo nomine*, at a greater rate than was allowed by law was charged in the note secured by the mortgage.

We do not think there is force in the fourth exception of appellant. The defendant was liable on the note to the full extent, and had the right to plead usury to such extent.

2   The purchase by the defendant from his comortgagors of their two-thirds interest in the land did not relieve him from liability on the note, and, therefore, should not affect his defence of usury.

It is the judgment of this court, that the judgment of the court below be affirmed.

MR. JUSTICE POPE concurred.

MR. CHIEF JUSTICE McIVER. If the question whether the contract evidenced by the note set out in the complaint was such a contract as would fall under the usury law, under the undisputed evidence in the case, were an open question, I should feel bound to hold that the usury law did not apply to such a contract. The contract here sought to be enforced having been entered into on the 1st day of January, 1883, before the act of 1882, approved 21st December, 1882, went into effect—the twenty days not having expired—must be governed by the law which was in force at the time the contract was entered into. That law will be found in the act of 1877 (16 Stat., 325), incorporated in the General Statutes of 1882, as section 1288. That statute forbids the taking or charging interest at greater

rate than seven per centum per annum "upon any contract
arising in this State for the hiring, lending or use of money or
other commodity." It will be observed that the statute does
not forbid the taking or charging of interest at a greater rate
than seven per cent. per annum upon *any* contract for the pay-
ment of money, but only upon any contract for "the hiring,
lending or use of money or other commodity." Hence, when
the question is whether a given contract falls within the pur-
view of the statute, the inquiry must necessarily be whether it
is a contract for "the hiring, lending or use of money or other
commodity." If it is, then the statute applies; but if it is not,
then the statute does not apply. If the legislature intended
that the usury law should apply to any contract *for the payment
of money*, it would have been very easy and most natural for
them to have said so. But they did not use any such general
language, and, on the contrary, expressly confined the operation
of the statute to contracts of a particular and specified charac-
ter, to wit: contracts "for the hiring, lending or use of money
or other commodity."

Now in this case the undisputed evidence is that the contract
here in question was a contract to pay the purchase money of a
certain tract of land, and not a contract for the hiring, lending
or use of money or other commodity. It seems to me, there-
fore, that under a proper construction of the statute, the con-
tract here sought to be enforced is not a contract to which the
usury law applies, and I would so hold, in the absence of con-
trolling authority to the contrary. But the case of *Thompson*
v. *Nesbit*, 2 Rich., 73, cited by Mr. Justice Gary in the leading
opinion, and fully and fairly there set forth, requires a different
construction; and yielding to the authority of that case, as I am
bound to do, I must concur in the conclusion reached by Mr.
Justice Gary. It is true, that the case just cited arose under
the act of 1830 (6 Stat., 409), and not under the statute which
was in force at the time the contract in question was made, but
the language of the two statutes, so far as relates to the partic-
ular question here under consideration, is, in my judgment,
substantially the same; and, therefore, the construction placed
by the former Court of Appeals upon the language of the act

of 1830, must be regarded as authoritative construction of similar language in the act of 1877.

It is also true, that in the previous case of *Coleman* v. *Garlington*, 2 Speer, 202, it is plainly intimated by O'Neall, J., who cites the case of *Beete* v. *Bidgood*, 14 E. C. L. R., 80, that the usury law (act of 1830) did not apply to a contract to secure the payment of the purchase money of property sold. But I do not understand that that was a point *decided* in that case. At all events, the case of *Thompson* v. *Nesbit, supra,* was subsequently decided, and is, therefore, the controlling authority; especially when we find that Judge O'Neall, who had prepared the opinion of the court in *Coleman* v. *Garlington*, subsequently concurred in the decision in the case of *Thompson* v. *Nesbit.*

As to the other question, I do not deem it necessary to add anything to what has been said by Mr. Justice Gary.

Judgment affirmed.